# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

**In re**

ROGER LEROY BURCHARD
and JANICE MARLENE
BURCHARD,

Debtors.

**Case No. 05-04949-JDP**
**Chapter 7**

_____

# MEMORANDUM OF DECISION

_____

**Appearances:**

Laura Burri, RINGERT LAW OFFICE, Boise, Idaho, Attorney for Debtors.

Joseph M. Meier, COSHO HUMPHREY, Boise, Idaho, Attorney for Creditors Wayne and Amanda Duncan.

*Introduction*

Debtors Roger Leroy Burchard and Janice Marlene Burchard ("Debtors") have filed a Motion to Avoid Judgment Lien. Docket No. 19. The target lienholders, Wayne and Amanda Duncan, objected. Docket No. 22. The Court conducted a hearing on the motion on February 2, 2009, and

MEMORANDUM OF DECISION - 1

took the issues under advisement. Having considered the record, the evidence, the arguments of counsel, and applicable law, this Memorandum disposes of the motion, and constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052; 9014.[1]

*Procedural Posture*

As the result of a dispute over the construction of the Duncans' home in Parma, Idaho, on October 28, 2003, the state court awarded them a judgment against Debtors for $53,144.44.[2] Ex. A.

On October 13, 2005, Debtors filed a chapter 7 petition. They listed the Duncans' judgment debt in their schedules. Docket No. 1. There was no distribution made to creditors in the bankruptcy case, and Debtors

---

[1] All section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1330, and rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001– 9036, as they existed prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[2] Ex. A evidences the judgment amount as entered by the state court on October 28, 2003, and this same amount is listed on Debtors' Schedule F. Docket No. 1. That amount reflects a damage award of $45,817.66 plus attorneys fees and costs of $7,326.78. Ex. A. However, in their opposition to Debtors' motion, Duncans allege the judgment amount was $40,822.48. This figure is apparently in error, as the Duncans' counsel utilized the $45,817.66 figure at the hearing. The Court will likewise assume $45,817.66 is the correct amount.

MEMORANDUM OF DECISION - 2

were granted a discharge. The case was closed on August 15, 2006. Docket No. 15.

The Duncans renewed their judgment on October 14, 2008[3]. Ex. B. On December 8, 2008, Debtors moved to reopen their bankruptcy case. Docket No. 17. That same day, they filed the lien avoidance motion.

*Findings of Fact*

Debtor Roger Burchard has, for years, worked as a home builder. He has built several homes in the Nampa/Caldwell area, including approximately three or four smaller homes, and a similar number of larger homes (4,000 – 5,000 square feet) in 2005. He built the Debtors' residence at 1420 Blossom Place in Nampa, Idaho.

In 2005, Debtor Jan Burchard worked as a realtor, marketing principally residential property in Canyon County, Idaho.

A. Fair Market Value.

To dispose of Debtors' motion, the Court must determine the fair

---

[3] An Amended Renewed Judgment was entered on December 29, 2008. Ex. C.

MEMORANDUM OF DECISION - 3

market value of Debtors' home on October 13, 2005. *In re Webb*, 03.1 I.B.C.R. 25, 26 (Bankr. D. Idaho 2003) (holding that, for purposes of § 522(f), "'value' means fair market value as of the date of the filing of the petition . . . ."). In their schedules, Debtors valued their home at $106,000. Docket No. 1. At the hearing, they each testified that they arrived at that figure by taking the appraised value of the home in 2005[4], and the assessor's value of the home, which was $95,100, and "splitting it in the middle" to arrive at $106,000. Ex. 4. In addition, Debtors submitted their homeowners insurance statement dated October 19, 2005, which includes a replacement cost for the dwelling of $115,000. Ex. 8. In their valuation, Debtors testified that they also relied on their expertise as a home builder and real estate agent, and their knowledge of home sales in the Nampa area at that time.

Debtors note that their home is located within a "Corey Barton"

---

[4] Debtors had their home appraised in 2005. Ex 5. The appraiser's report was offered in evidence at the hearing, but was not admitted based upon Duncans' objection. While the Court has not considered the substance of the 2005 appraisal report, it may consider that Debtors' valuation was based in part upon the results of that appraisal.

MEMORANDUM OF DECISION - 4

subdivision.  The Court understands this to mean that most homes in the neighborhood were built by Corey Barton.  Debtors testified that in 2005, Corey Barton offered incentives to prospective purchasers by, for example, waiving a down payment or payment of closing costs.  Because Debtors' house was an existing home, and other homes for sale in their subdivision consisted of new Corey Barton homes, Debtors felt their existing home would have been less attractive to buyers, and therefore, worth less than the new homes.

Duncans argue that Debtors' valuation of their home is too low.  They insist the value of the home in 2005 was at least $126,000, based solely upon an appraisal they recently procured in order to defend against Debtors' motion.  Ex. D.  The appraiser they retained, Bill Basham, testified that he has been preparing real estate appraisals since 1978, and appraises residential property primarily in Ada, Canyon and Elmore counties.  He estimates that he appraised approximately 150 homes in 2005.

Duncans' expert performed an "historical appraisal" of Debtors' home, meaning that he performed the appraisal in 2009, but his goal was

MEMORANDUM OF DECISION - 5

to determine the fair market value of the property as of 2005. To determine the appraised value of Debtors' home, Basham utilized 2005 data that was available through the Multiple Listing Service (MLS), and he inspected the subject property. For data about the features and condition of the house in 2005, Basham relied on information provided in an interview with Debtors, who willingly answered all his questions. Basham testified that historical appraisals are not less accurate than current appraisals if the necessary data is available.

    Basham used more MLS data than normal so he had more comparables from which to extrapolate the value of Debtors' home in October, 2005. The six comparable sales he considered involved homes located either in Debtors' subdivision or very nearby, that were sold between June, 2005 and December, 2005, with sale prices ranging from $114,300 to $134,000. The adjusted sale prices of the comparable homes, when compared to Debtors' home, ranged from $119,800 to $129,000. To guard against the possibility that closing costs or other buyer incentives might have been rolled into the 2005 sales price and not noted on the MLS,

MEMORANDUM OF DECISION - 6

Basham also reviewed two comparable sales for homes not located in Debtors' subdivision, and one sale of a home in the neighborhood, but which was not built by Corey Barton. Basham noted that Debtors' home had better finish quality than other homes in the neighborhood, a tile entryway, and the front porch had been extended further than other nearby homes. After taking all this data into account, Basham opined that the fair market value of Debtors' home in October of 2005 was $126,000. Ex. D.

The Court finds Basham's valuation is entitled to more weight than that proposed by Debtors. Although Debtors' opinion benefits from their experience gained through their respective occupations, they each testified that they basically adopted the average between the appraised value and the assessed value of the home to arrive at a fair market value.

Basham, on the other hand, compared Debtors' home to six other homes that were sold in the area during the relevant period, adjusted the sales prices for differences and particularities in the properties, interviewed Debtors to determine what changes had been made to the

MEMORANDUM OF DECISION - 7

property since 2005, and determined that there were no significant differences between the property in 2005 and when he examined it in 2009, except normal wear and tear. As Debtors' 2005 appraisal report was not admitted in evidence, the difference between the two appraisal reports cannot be analyzed and considered. Accordingly, as a matter of disputed fact, the Court finds that the fair market value of Debtors' home in October, 2005 was $126,000.

### *Conclusions of Law and Disposition*

Section 522(f)(1)(A) allows a debtor to avoid a judicial lien to the extent that lien impairs the debtor's exemption. The statute provides, in relevant part:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is –
> (A) a judicial lien, other than [certain judicial liens not at issue here][.]

11 U.S.C. § 522(f). Lien avoidance contemplates satisfaction of four

MEMORANDUM OF DECISION - 8

separate elements:

> Under § 522(f), to avoid a lien, the burden of proof is on the debtor to show: (1) there is an exemption to which the debtor is entitled; (2) that the property is listed in the debtor's schedules and claimed as exempt; (3) that the lien impairs the exemption; and (4) that the lien is judicial rather than consensual.

*In re Taylor*, 03.2 I.B.C.R. 132, 132-33 (Bankr. D. Idaho 2003).

Of those four elements, Duncans concede that Debtors properly listed their house in their bankruptcy schedules, claimed a valid homestead exemption in the house valued at $50,000[5], and that Duncans' lien is a judicial lien. Thus, the only dispute is whether the lien impairs the exemption.

Under the Code, a simple arithmetic methodology is employed to determine whether impairment exists:

> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of –

---

[5] The Idaho homestead exemption was increased from $50,000 to $100,000, effective March 30, 2006. As Debtors filed their petition in 2005, they were entitled to a $50,000 homestead exemption.

MEMORANDUM OF DECISION - 9

>                (I) the lien;
>                (ii) all other liens on the property; and
>                (iii) the amount of the exemption that the
>                debtor could claim if there were no liens on
>                the property;
>        exceeds the value that the debtor's interest in the
>        property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

Under this statute, the total amount of Duncans' judicial lien, the mortgage, and Debtors' homestead exemption, must be compared to the value of Debtors' residence in order to determine the extent to which Duncans' lien impairs Debtors' homestead exemption. *In re Webb*, 03.1 I.B.C.R. at 27; *In re Taylor*, 03.2 I.B.C.R. at 133. The sum of Duncans' lien ($45,817.66), the mortgage ($65,777.80) and the homestead exemption ($50,000) is $161,595.46. This amount exceeds the $126,000 fair market value of the home by $35,595.46. Duncans' lien will be avoided to that extent. Any remaining balance due to Duncans on the judgment lien is enforceable.

MEMORANDUM OF DECISION - 10

*Conclusion*

Debtors' motion to avoid the Duncans' lien will be granted, but only in part. A separate order will be entered.

Dated: April 7, 2009

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 11